**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JASON MORELL,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Case No. 1:22-cv-278-SPB** |
| **v.** | ) | |
| | ) | |
| **ERIE REGIONAL AIRPORT AUTHORITY,** | ) | |
| | ) | |
| | ) | |
| **Defendant.** | ) | |

# MEMORANDUM OPINION

**Susan Paradise Baxter, United States District Judge**

Plaintiff Jason Morell filed this civil action against his former employer, the Erie Regional Airport Authority ("ERAA"), asserting claims for alleged violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§201 *et seq.*, and unjust enrichment. Pending before the Court is ERAA's motion for summary judgment. *See* ECF No. 29. For the reasons that follow, the motion will be granted as to Plaintiff's FLSA claim and dismissed as moot with respect to Plaintiff's unjust enrichment claim. The latter claim will be dismissed without prejudice so that Plaintiff may continue to prosecute that cause of action in state court.

## I. BACKGROUND

ERAA is a municipal authority that operates the Erie International Airport in Erie, Pennsylvania. ECF No. 31, ¶1; ECF No. 39, ¶1. Plaintiff was employed by ERAA from April 2003 until his resignation on April 21, 2021. *Id.* at ¶2.

Plaintiff began his employment with ERAA as a full-time police officer. ECF No. 31, ¶3; ECF No. 39, ¶3. Shortly after being hired, he became a K-9 Officer. *Id.* at ¶4. At all times relevant to this litigation, Plaintiff was partnered with a bomb-detection K-9 named "Smoke."

*id.* at ¶5. Smoke was acquired as part of ERAA's K-9 explosive detection team, a public safety measure that was initiated in the wake of the September 11, 2001 terrorist attacks. ECF No. 30-1, Pl. Depo at 9:24-10:24, 14:3-20, 38:7-9; *see also* ECF No. 39-3.

When Plaintiff first became a K-9 officer, he was an at-will employee not covered by any collective bargaining agreement. ECF No. 31, ¶8; ECF No. 39, ¶8. As of January 1, 2020, however, Plaintiff was subject to a Collective Bargaining Agreement that covered ERAA police officers (the "CBA"). *Id.* at ¶¶ 9,10. For each of the years 2020 through 2023, the CBA provided a higher base payroll rate for "Full Time K-9" officers than for non-K-9 "Full Time" officers. ECF No. 30-2 at 28-29; *see also* ECF No. 31, ¶12; ECF No. 39, ¶12. For example, a starting K-9 officer had an initial pay rate of $22.31 in 2020 and $22.64 in 2021; by comparison, non-K-9 full-time officers had a starting pay rate of $21.25 in 2020 and $21.57 in 2021. ECF No. 30-2 at 28-29; *see also* ECF No. 31, ¶14; ECF No. 39, ¶14. This practice of granting higher pay rates to K-9 officers was consistent with how ERAA had operated prior to the existence of the CBA. ECF No. 31, ¶13; ECF No. 39, ¶13.

In his position as a K-9 police officer for ERAA, Plaintiff worked on a daily basis and provided daily care for Smoke. ECF No. 31, ¶21; ECF No. 39, ¶21. Plaintiff contends this involved necessary care during his shift and as well as additional care both before and after his shift, for which he was not compensated. *See* ECF No. 39, ¶21; ECF No. 39-2 at Interrogatory Answers at Nos. 3, 4, 6, 10. Plaintiff specifically identifies as compensable "work" such tasks as grooming, feeding, exercising, training, and cleaning up after Smoke, taking him to veterinary appointments, and administering any medications. *See* ECF No. 30-1, Pl. Depo at 17:18-23:17; ECF No. 39-2 at Interrogatory Nos. 3, 4, 6.

According to the Erie International Airport Police Department's Rules and Regulations pertaining to K-9 policy and procedures, K-9 handlers were "responsible for the general health, care and well being of their K-9" and had to "schedule vet or grooming appointments as needed." ECF No. 30-3. "All K-9 costs (vet, grooming, food and supplies) [were] covered by the Erie Municipal Airport Authority." *Id.* at 3, § ¶V.11. When questioned about this policy, Plaintiff was unsure whether it was formally in effect during times relevant to this case; however, he concedes that ERAA reimbursed him for Smoke's food and veterinary visits. *See* ECF No. 30-1, Pl. Depo at 18:7-16; 46:17-48:6, 76:18-20.

In 2014, Plaintiff raised the issue of obtaining compensation for the off-hours he was spending caring for Smoke. Plaintiff addressed the matter with two successive executive directors for ERAA, Kelly Fredericks and Chris Rodgers, but there was no follow up on the part of these individuals. ECF No. 30-1, Pl. Depo. at 56:19-61:7.

By approximately 2017 or 2018, the K-9 program was beginning to fall out of favor with members of ERAA's management due to budgetary concerns, and there was talk of cutting the program. *See* ECF No. 30-1, Pl. Depo at 50:18-56:5, 61:9-63:18. Plaintiff's union filed a grievance, however, and a small committee successfully lobbied to keep the program alive. *See id.* Nevertheless, when Derek Martin subsequently assumed the office of ERAA's executive director, "one the first things he decided to do was to cut the K-9 program" based on information he had received from his management team. ECF No. 30-1, Pl. Depo at 63:23-24, 64:3-10. Accordingly, all of Plaintiff's conversations with Martin concerned Plaintiff's efforts to save the K-9 program rather than personal requests for additional compensation. *Id.* at 11-22.

On or about January 31, 2019, Plaintiff sustained an injury in the course of his employment. ECF No. 31, ¶22; ECF No. 39, ¶22. As a result of this injury, Plaintiff remained off work between May 23, 2019 and March 2, 2021, during which time he continued to house and care for Smoke. *Id.* at ¶23. Smoke did not provide any services for ERAA during the time Plaintiff was on leave. *Id.* at ¶24. Plaintiff posits this is because the K-9 was partnered with him and no others at ERAA were able to utilize the K-9. *See* ECF No. 39, ¶24. Plaintiff testified that he and Smoke were a "package deal" and the dog did not do any work for ERAA unless Plaintiff was working for ERAA. ECF No. 31, ¶25; ECF No. 39, ¶25.

Plaintiff eventually returned to work on March 3, 2021 at a pay rate of $29.05 per hour, which exceeded the full-time K-9 officer rate set forth in the CBA. ECF No. 31, ¶26; *see* ECF No. 13, ¶¶13 and 19; ECF No. 30-2 at 16. He continued to work for seven weeks and then submitted his resignation on April 21, 2021. ECF No. 31, ¶¶2, 30; ECF No. 39, ¶2, 30. During this time period, Smoke did not perform any K-9 services for ERAA, nor was he physically present on ERAA's premises. ECF No. 31, ¶¶28-29; ECF No. 39, ¶¶28-29; ECF No. 30-4, ¶¶4-5. Upon Plaintiff's resignation, ERAA transferred ownership of Smoke to him at no cost and terminated the K-9 program. ECF No. 30-4, ¶6; *see also* ECF No. 30-1, Pl. Depo. at 54:25-55:4.

After resigning from his job, Plaintiff filed the instant lawsuit in which he seeks overtime pay for the work he performed caring for Smoke. Plaintiff claims that ERAA's failure to provide overtime pay constitutes a violation of the Fair Labor Standards Act as well as unjust enrichment.

ERAA filed the pending motion for summary judgment, arguing that both the FLSA and unjust enrichment claims fail as a matter of law. ERAA contends that Plaintiff has no

claim under the FLSA because the activities for which he seeks compensation were not "work," as defined by applicable law. ERAA also contends that Plaintiff's unjust enrichment claim fails because it is barred either by Pennsylvania's sovereign immunity statute or by Plaintiff's collective bargaining agreement.

ERAA's motion for summary judgment has been fully briefed and is ripe for adjudication. The Court's ruling follows.

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(a) requires the court to enter summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Thus, under Rule 56, a defendant may seek summary judgment by pointing to the absence of a genuine fact issue on one or more essential elements of a claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (holding that "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial").

Under this standard, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). A disputed fact is "material" if proof of its existence or nonexistence would affect the outcome of the case under applicable substantive law. *Id.* at 248; *Gray v. York Newspapers, Inc.*, 957 F.2d 1070, 1078 (3d Cir. 1992). An issue of material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 257; *Brenner v. Local 514, United Bhd. of Carpenters and Joiners of Am.*, 927 F.2d 1283, 1287-88 (3d Cir. 1991).

When determining whether a genuine issue of material fact remains for trial, the court must view the record and all reasonable inferences to be drawn therefrom in favor of the nonmoving party. *Moore v. Tartler*, 986 F.2d 682 (3d Cir. 1993); *Clement v. Consol. Rail Corp.*, 963 F.2d 599, 600 (3d Cir. 1992). To avoid summary judgment, however, the nonmoving party may not rest on the unsubstantiated allegations of their pleadings. Instead, once the movant satisfies its burden of identifying evidence that demonstrates the absence of a genuine issue of material fact, the nonmoving party must go beyond their pleadings with affidavits, depositions, answers to interrogatories or other record evidence to demonstrate specific material facts that give rise to a genuine issue. *Celotex Corp.*, 477 U.S. at 324.

## III. DISCUSSION

### *A. Plaintiff's Claim Under the Fair Labor Standards Act*

The Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. §§ 201–219, requires an employee who works "a workweek longer than forty hours" to be paid at least one and one-half times the employee's regular rate for the work performed over forty hours. 29 U.S.C. § 207(a)(1). Employers who violate the FLSA are liable for unpaid overtime compensation and "an additional equal amount as liquidated damages." *Id.* § 216(b).

Although the statute does not define "work," the Supreme Court has explained that an employee "works" within the meaning of the FLSA when he or she is engaged in some kind of activity that is "controlled or required by the employer and pursued necessarily and primarily for the benefit of the employer and his business." *IBP, Inc. v. Alvarez*, 546 U.S. 21, 25 (2005) (citation and internal quotation marks omitted); *see Sec'y United States Dep't of Labor v. Nursing Home Care Mgmt. Inc.*, 128 F. 4th 146, 154 (3d Cir.), *cert. denied sub nom. Nursing Home Care Mgmt., Inc. v. Chavez-DeRemer*, 146 S. Ct. 99 (2025).

ERAA contends that there is no time during the relevant statute-of-limitations period in this case during which Plaintiff perform uncompensated "work." ERAA insists this is true even if the Court utilizes the 3-year limitations period that applies to allegedly "willful" violations. *See* 29 U.S.C. §255(a).[1] Because Plaintiff filed his lawsuit on September 29, 2022, the three-year limitations period encompasses the time period from September 29, 2019 to April 21, 2021, when Plaintiff tendered his resignation.

ERAA notes that Plaintiff was off work with an injury from May 23, 2019 to March 3, 2021, when he returned to work. Thus, as of September 29, 2019, Plaintiff was not working and was instead receiving worker's compensation benefits. When Plaintiff returned to his job on March 3, 2021, he received an elevated pay rate in excess of the rate specified in the CBA, even though Smoke did not return to work with him and no K-9 services were provided. In fact, during the entire period from September 29, 2019 to April 21, 2021, Smoke did not perform K-9 services for ERAA, nor was he ever physically present on ERAA property. In sum, Plaintiff cared for Smoke during the entirety of the relevant statute of limitations period, but during this time Smoke never performed any services for ERAA. Thus, ERAA contends, the time Plaintiff spent caring for Smoke was not "predominantly" for ERAA's benefit and was not compensable "work."

This argument is well taken. As discussed, the purpose of the ERAA maintaining a K-9 unit was to enhance airport security in the wake of the terrorist acts committed on September 11, 2001. To that end, ERAA utilized dogs like Smoke, whose singular job was to search for and

---

[1] Section 255 of the FLSA establishes a two-year statute of limitations period for an employer's violation of the statute, unless the violation was "willful," in which case a three-year limitations period applies. *See* 29 U.S.C. §255(a). ERAA disputes that the three-year period would apply in this case; however, it utilized the three-year period solely for the sake of argument. The Court will therefore do the same.

detect the presence of explosive materials. Nothing in the record suggests that ERAA derived a benefit from its ownership of Smoke apart from the enhancement of airport security. On the contrary, Plaintiff testified to widespread sentiment within ERAA's management that favored eliminating the K-9 program and, although that did not happen during Plaintiff's tenure at ERAA, the program effectively ended when Plaintiff resigned, at which time ownership of Smoke was transferred to him for free. Critically, during the entire actionable three-year period predating this lawsuit, Smoke was never utilized for any law enforcement or airport security purpose, nor was he even present on the airport premises. Although Smoke technically remained the property of ERAA until Plaintiff's resignation on April 21, 2021, any care that Plaintiff rendered to the animal during this time was not "primarily for the benefit of ERAA," because the ERAA did not derive any benefit from its ownership of Smoke in the absence of his K-9 services.

Based on these unique circumstances, the time that Plaintiff spent caring for Smoke from September 29, 2019 to April 21, 2021 did not involve compensable "work" within the meaning of the FLSA. Accordingly, the FLSA does not entitle Plaintiff to compensation for those services. The Court will therefore enter summary judgment in favor of ERAA on Plaintiff's FLSA claim.

*B. Plaintiff's Unjust Enrichment Claim*

Plaintiff's only remaining cause of action is a state law claim for unjust enrichment. Under 28 U.S.C. §1367(c), a district court may decline to exercise supplemental jurisdiction over state law claims where, as here, it has dismissed all claims over which it had original jurisdiction. In fact, when the district court "dismisses the federal claims prior to trial or at the early stages of the litigation, it *must* decline to exercise jurisdiction over the state law claims unless

considerations of judicial economy, convenience, and fairness justify retaining that jurisdiction." *Talley v. Clark*, 111 F.4th 255, 266 n.6 (3d Cir. 2024) (quotation marks and citations omitted); *see United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966) (explaining the general rule that if all federal claims are dismissed before trial, courts should likewise dismiss pendent state-law claims); *Shaffer v. Bd. of Sch. Dirs. Albert Gallatin Area Sch. Dist.*, 730 F.2d 910, 912 (3d Cir. 1984) (explaining that, absent "extraordinary circumstances," supplemental jurisdiction over state-law claims should be declined "where the federal claims are no longer viable") (citation omitted)).

Here, none of the above-stated concerns compel this Court to maintain supplemental jurisdiction over Plaintiff's unjust enrichment claim. Although the unjust enrichment claim is factually related to Plaintiff's federal FLSA claim, the former claim does not involve issues of federal policy and is better resolved in state court. No trial has yet been scheduled in this case and, though the case has been pending for some time, discovery has been completed and the remaining claim is now postured for an expeditious resolution in the Court of Common Pleas. Further prosecution of Plaintiff's claim will not be foreclosed by a dismissal without prejudice, because the applicable statute of limitations has been tolled during the pendency of this action and will continue to be tolled "for a period of 30 days after it is dismissed unless State law provides for a longer tolling period." 28 U.S.C. § 1367(d). For these reasons, this Court declines to exercise supplemental jurisdiction over Plaintiff's unjust enrichment claim, and that claim will be dismissed without prejudice.

## IV. CONCLUSION

Based upon the foregoing reasons, the Defendant's motion for summary judgment will be granted as to Plaintiff's claim under the Fair Labor Standards Act and dismissed as moot with

respect to Plaintiff's unjust enrichment claim. The latter claim will be dismissed without prejudice, so that Plaintiff may continue his prosecution of that claim in Pennsylvania state court.

An appropriate Order follows.

SUSAN PARADISE BAXTER
United States District Judge